**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------X
JORGE C. AGUILERA,

                        Plaintiff,

       -against-

THE COUNTY OF NASSAU, Police Officer
JOHN DOE #1, and Police Officer JOHN DOE #2,

                        Defendants.
----------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
05-CV-4002 (ADS)(ARL)

**APPEARANCES:**

**PARKER & WAICHMAN**
Attorneys for the Plaintiff
111 Great Neck Road
Great Neck, New York 11021-5402
       By:    Fred R. Rosenthal, Esq., of Counsel

**LORNA B. GOODMAN
NASSAU COUNTY ATTORNEY**
Attorneys for the Defendants
One West Street
Mineola, New York 11501
       By:    Deputy County Attorney Sean R. Strockyj

**SPATT, District J.**

       Jorge C. Aguilera (the "plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging that the County of Nassau (the "County") and two unnamed police officers of the Nassau County Police Department (collectively, the "defendants") falsely arrested him and denied him medical assistance

in violation of his rights guaranteed by the United States Constitution and New York State law.

The plaintiff commenced this action on August 22, 2005. On March 27, 2006, the Court dismissed the complaint without prejudice for failure to state a claim. On April 26, 2006, the plaintiff filed an amended complaint. Presently before the Court is the defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") dismissing the amended complaint.

**I.  BACKGROUND**

The following facts are derived from the amended complaint and the plaintiff's testimony at a hearing conducted pursuant to section 50(h) of New York's General Municipal Law, which was annexed to the amended complaint as an exhibit. The facts are taken as true for the purpose of this motion.

The plaintiff was born on April 8, 1944, making him sixty years old at the time of the incident giving rise to this lawsuit. On August 26, 2004, the plaintiff was driving his employer and his employer's wife home in a limousine on the Long Island Expressway ("LIE") in the area of Syosset in Nassau County. The plaintiff worked for the couple he was driving as a driver and a caretaker for twenty-one years.

At approximately 8:00 p.m., the plaintiff began to experience difficulty focusing. This caused the plaintiff to operate the vehicle in an erratic manner. Two

police officers of the Nassau County Police Department witnessed the plaintiff's vehicle driving erratically, and pulled the plaintiff over when he stopped at a red light on a service road of the LIE.

During the traffic stop, the officers asked the plaintiff to step out of the car. The plaintiff complied, but as he "started walking . . . [he] started falling down. [The plaintiff] had to grab the top of the limo, falling down. [The plaintiff ] didn't know what to do, what to say . . . [his] left side wasn't responding." Responding to an inquiry from one of the officers, the plaintiff informed the officers that he had not been drinking alcohol and had not taken any medication. At this time, the officers directed the plaintiff to submit to field sobriety tests, including an alcohol breathalyzer test. The plaintiff voluntarily complied. However, the plaintiff again became disoriented and fell down, needing to be helped to his feet by one of the officers. At some point the plaintiff dropped his wallet and all of the contents fell out. The plaintiff attempted to retrieve the contents of this wallet, but could not due to a lack of coordination. One of the officers commented that the plaintiff "looked like he was having a stroke." The plaintiff informed the officers that he was "not feeling well"; that "something [was] wrong" with him; that it was "not normal" for him to feel that way; and that he did not understand what was happening to him. The plaintiff requested medical attention.

During the traffic stop, the plaintiff's employer informed the police that he believed the plaintiff was ill. According to the complaint, the plaintiff's employer

> specifically told defendant officers that he "wanted to give [the plaintiff] medical attention immediately, because, "something had to be wrong with [him], he must be sick with something, because [the plaintiff] has been my driver for 21 years and I never was involved in any kind of accident. He's a champion runner, he's a Jones Beach lifeguard, he doesn't drink, he doesn't use drugs. Something has to be wrong with him."

The plaintiff's employer requested that the officers take the plaintiff to a hospital.

Rather than call for medical assistance, the officers handcuffed the plaintiff and arrested him for "erratic driving." In their memorandum in support of their motion for judgment on the pleadings, the defendants indicate their belief that the plaintiff was arrested for Driving While Intoxicated under either section 1192(3) or 1192(4) of the New York Vehicle and Traffic Law ("DWI"). The precise offense for which the plaintiff was charged is not specified. The officers drove the plaintiff to the police station, which took approximately one half hour of travel time. One of the officers told the plaintiff in the police car that "someone will look at you," although according to the plaintiff that never happened. The plaintiff's employer drove himself and his wife home after the plaintiff was removed from the scene of the traffic stop.

Upon arriving at the police station, the plaintiff was "chained to a bench." At the police station, the plaintiff was feeling worse and continued to request medical attention. He continued to have problems with coordination, and was feeling "lousier"

and suffering from a headache. He told the arresting officer that he "need[ed] to see a doctor." He requested that his handcuffs be removed, because they were "too tight"; were cutting off the circulation to his hands; and that his hands had become numb.

At some point, a third police officer took the plaintiff to a restroom to collect a urine sample. The plaintiff had difficulty producing the sample, at one point dropping the sample cup which fell into the urinal. Finally, the plaintiff was able to produce a urine sample, a process that took approximately one half hour. After the plaintiff provided a urine sample he was returned to a bench and secured to it with handcuffs and a chain. In all, the plaintiff was handcuffed to a bench for approximately two hours during the night without receiving medical attention. According to the plaintiff, none of the sobriety or other tests conducted on him indicated the presence of alcohol or drugs.

Later, a paramedic arrived to take a blood sample from the plaintiff. The paramedic told the arresting officer that the plaintiff needs to see a doctor. Officers carried the plaintiff to an ambulance which brought him to Winthrop University Hospital in Mineola, New York. When they arrived at the hospital, a doctor commented that the plaintiff exhibited symptoms of a stroke. The plaintiff asked the arresting officer if he heard what the doctor said, to which the officer responded "Yes. Don't worry. We dismiss everything. Don't worry about it." The charges against the plaintiff were apparently dropped or never filed.

The plaintiff remained at Winthrop University Hospital overnight and was told by a doctor that had a stroke. The following day, the plaintiff left Winthrop University Hospital and his employers had him admitted to North Shore Long Island Jewish Hospital, where he stayed for approximately one week.

On June 23, 2005, the plaintiff commenced this action. Originally, the plaintiff asserted at least three causes of action: (1) Section 1983 false arrest; (2) false imprisonment; (3) and negligence. Reading the complaint liberally, it was possible that the plaintiff may also have been attempting to assert a cause of action based on the arresting officer's use of excessive force. The complaint named the County of Nassau and the Nassau County Police Department as the only defendants.

On March 27, 2006, the Court granted the defendants' motion dismiss pursuant to Fed. R. Civ. P. 12(b), dismissing the complaint without prejudice and with leave to replead. Aguilera v. County of Nassau, 425 F. Supp. 2d 320 (E.D.N.Y. 2006). The plaintiff's claims against the Nassau County Police Department were dismissed because under New York law the Nassau County Police Department is considered an administrative arm of the County, without a legal identity separate and apart from the municipality and, therefore, without the capacity to sue or be sued. See, e.g., Warner v. Village of Goshen Police Dept., 256 F. Supp. 2d 171, 176 (S.D.N.Y. 2003) (dismissing the complaint against the police department); Davis v. Lynbrook Police Dept., 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (same).

The plaintiff's Section 1983 claim against Nassau County was dismissed because the plaintiff failed to allege any facts from which it could be inferred, even circumstantially, that a County custom or policy, or the County's failure to train its officers, was the driving force of the plaintiff's allegedly unconstitutional detention. See, e.g., Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989); Monell v. Dep't of Soc. Serv., 436 U.S. 658, 694-95, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978). The Court dismissed the plaintiff's state law causes of action in the absence of any viable basis for federal subject matter jurisdiction. See 28 U.S.C. § 1367.

On April 26, 2006, the plaintiff filed an amended complaint naming the County of Nassau and Police Officers John Doe #1 and #2 as defendants. The plaintiff alleges three causes of action: (1) Section 1983 for false arrest/false imprisonment and denial of immediate medical attention; (2) false imprisonment under New York State law; and (3) negligence under New York State law. On May 30, 2006, the defendants filed an answer to the amended complaint. On July 21, 2006, the defendant made a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(b)(6).

## II. DISCUSSION

### A. Legal Standards

The standard for reviewing a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is analogous to the rules pursuant to Rule 12(b)(6). Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). The Court must determine whether "the moving party is entitled to judgment as a matter of law." Burns Int'l Sec. Serv., Inc. v. Int'l Union United Plant Guard Workers of Am., 47 F.3d 14, 16 (2d Cir. 1995).

A court may grant a Rule 12(b)(6) motion to dismiss for failure to state a claim only where "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000), abrogated on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1975)); see also Scutti Enterprises, LLC, v. Park Place Entm't Corp., 322 F.3d 211, 214 (2d Cir. 2003) (quoting Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997)); Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999). All of the factual allegations in the complaint must be accepted as true and all inferences drawn in the light most favorable to the plaintiff. Id. (citing Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999)).

In its analysis under Rule 12(b)(6), the court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Id. at 39 (citing Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)). At the pleading stage, the plaintiff need only provide a "'short and plain statement'" that "'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Swierkiewicz, 534 U.S. at 512-13, 122 S. Ct. at 998 (citing Conley, 355 U.S. at 47, 78 S. Ct. at 103); see also Fed. R. Civ. P. 8(a)(2). This notice pleading standard expects "liberal discovery rules and summary judgment motions to define disputed facts and issues to dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512, 122 S. Ct. at 998. As with a 12(b)(6) motion to dismiss, the question on a 12(c) motion is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support his claims. Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995).

The defendants argue that the plaintiff's Section 1983 claim should be dismissed because the officers' stop and seizure of the plaintiff was lawful because they had probable cause to believe the plaintiff was driving while intoxicated, based on his erratic driving and subsequent behavior. Second, the defendants argue that the plaintiff's Section 1983 claim against Nassau County should be dismissed because the plaintiff failed to sufficiently allege that the defendant officers' conduct was the result

of a policy or custom of Nassau County or the County's failure to train its police officers. Finally, the defendants move to dismiss the plaintiff's negligence claim against Nassau County arguing that the Court lacks subject matter jurisdiction over this state law cause of action in the absence of a viable federal claim.

### B. As to the Plaintiff's Section 1983 for False Arrest

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. To state a claim under Section 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States." Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993).

In this case, the plaintiff's false arrest claim is based on an alleged violation of the Fourth Amendment to the United States Constitution. See Singer v. Fulton County Sheriff, 63 F.3d 110, 115 (2d Cir. 1995). It is well-settled that the "existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest . . . under § 1983." Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996); see also Singer, 63 F.3d at 118 ("There can be no federal civil rights claim for false

arrest where the arresting officer had probable cause."). Here, the defendants argue that the fact that the officers had probable cause to believe that the plaintiff committed the offense of driving while intoxicated precludes the claim of false arrest as a matter of law.

Recently, the Second Circuit reviewed the standard for probable cause:

> Probable cause requires an officer to have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2004) (citation omitted). "When determining whether probable cause exists courts must consider those facts <u>available to the officer</u> at the time of the arrest and immediately before it," Caladrola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002) (emphasis supplied), as "[p]robable cause does not require absolute certainty." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003). Courts should look to the "totality of the circumstances" and "must be aware that probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." Caldarola, 298 F.3d at 162 (citation omitted).

Panetta v. Crowley, ---F.3d---, No. 02-7275-cv, 2006 WL 2383223, at *5 (2d Cir. Aug. 18, 2006). Importantly, in making a determination of probable cause "an officer may not disregard plainly exculpatory evidence." Id. (citing Kerman v. City of New York, 261 F.3d 229, 241 (2d Cir. 2001)).

At this time, it is not for the Court to decide whether probable cause, in fact, did exist at the time of the plaintiff's arrest. Rather, the Court must determine whether a plausible reading of the amended complaint could support a finding that probable

11

cause did not exist. The Court finds that the facts alleged in the amended complaint could support a determination that the police officers lacked probable cause to arrest the plaintiff for DWI. For this reason, the defendants' motion for judgment on the plaintiff's Section 1983 false arrest claim is denied.

Even if the officers were justified to pull the plaintiff over based on their suspicion that he was driving while intoxicated, that suspicion does not necessarily translate into probable cause to arrest the plaintiff. The sequence of events occurring after the plaintiff was stopped could have prevented that suspicion from rising to the level of probable cause in the mind of a reasonably cautious person.

The Court recognizes that the plaintiff's own protestations of innocence and requests for medical treatment, standing alone, may be insufficient to negate probable cause in the presence of other indicia of intoxication. See Callum v. Marsh, No. Civ. 302CV57(AHN), 2005 WL 752213, at *5 (D. Conn. Mar. 31, 2005). However, there were other factors present during the traffic stop at issue in this case. Specifically, the plaintiff's obvious physical condition; the two witnesses that are alleged to have requested that the plaintiff receive medical attention; and the fact that one of the arresting officers commented that the plaintiff looked like he was having a stroke, all must be considered. While "a police officer [that] has a reasonable basis for believing there is probable cause . . . is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," Ricciuti v. N.Y.C. Transit

Auth., 124 F.3d 123, 128 (2d Cir. 1997), nor may he ignore plainly exculpatory evidence. Panetta, 2006 WL 2383223, at *5. Questions such as this are factual in nature, and cannot be properly decided at the pleading stage. See Moore v. Comesanas, 101 F.3d 845, 863 (2d Cir. 1994).

Considering all of the circumstances as alleged in the complaint, and awarding the plaintiff every possible favorable inference, the Court is unwilling to hold as a matter of law that the defendant officers had probable cause to arrest the plaintiff. Accordingly, the defendants' for judgment in their favor on the plaintiff's false arrest claims based on the existence of probable cause is denied.

**C.     As to the Plaintiff's Allegation Against the County**

Under Section 1983, a municipality cannot be held liable solely on a theory of respondeat superior. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 694-95, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978). In order to state a claim against the municipality, the plaintiff must allege that the constitutional violation was a result of municipal "policy or custom." See Monell, 436 U.S. at 694-95, 98 S. Ct. 2018, 2037. A plaintiff may also state a claim against a municipality by alleging that the purported constitutional violation was the result of the County's failure to train its officers. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989).

In City of Canton, the Supreme Court established that a plaintiff may proceed against a municipality on a 'failure to train' theory for the constitutional violations of its employee "if the municipality's failure to train the employee 'amounts to deliberate indifference to the rights of persons with whom the police come into contact,' and is 'closely related' to, or 'the moving force' behind, the constitutional injury." Smith v. Metro North Commuter R.R., No. 98 Civ. 2528, 2000 WL 1449865, at *10 (S.D.N.Y. 2000) (quoting City of Canton, 489 U.S. at 388-89, 391); see also Vann v. City of N.Y., 72 F.3d 1040, 1049 (2d Cir. 1995).

In order to defeat a motion to dismiss for failure to state a claim the plaintiff's complaint must contain specific factual allegations tending to support the inference that the municipality failed to train its employees. Generally, allegations of a single, isolated incident of police misconduct will not suffice. See City of Canton, 489 U.S. at 387; Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") (citation omitted); Neighbour v. Covert, 68 F.3d 1508, 1512 (2d Cir. 1995) ("The mere allegation that the municipality failed to train its employees properly is insufficient to establish a municipal custom or policy.").

Here, viewing the allegations in the amended complaint in the light most favorable to the plaintiff, the plaintiff has satisfied its burden. Unlike the original

complaint, the facts alleged in the amended complaint can support an inference that Nassau County (1) had in a place a custom or policy requiring the police to detain DWI suspects regardless of their requests and apparent need for medical attention; or (2) failed to train its officers (a) to recognize when a DWI suspect was suffering from a serious medical condition, the symptoms of which might parallel some symptoms of intoxication; or (b) to appropriately respond to situations in which motorists suspected of vehicle and traffic infractions require immediate medical attention. The plaintiff alleges that Nassau County has received numerous complaints regarding its officers failure to provide immediate emergency medical attention to suspects in custody, but that information regarding the nature of those complaints is within the sole possession of Nassau County, and the specifics of which must be ascertained through discovery. Accordingly, the motion for judgment on the plaintiff's Section 1983 claims of false arrest and denial of medical aid is denied.

### D.     As to the Plaintiff's Negligence Cause of Action

Finally, the defendants argue that, should the Court determine that there was probable cause for the plaintiff's arrest and that no municipal liability exists on behalf of Nassau County, then the only remaining claim will be the plaintiff's state law tort claim for negligence and that the Court will no longer have jurisdiction over this case. Because the Court has determined that the plaintiff's Section 1983 false arrest claims against the officers and Nassau County survive, this portion of the defendants' motion

is moot. In any event, the defendants' premise that the Court "would no longer have jurisdiction" is incorrect. The plaintiff still has viable claims under Section 1983 for the failure to provide medical assistance. Accordingly, the defendant's motion to dismiss the plaintiff's negligence cause of action is denied.

### III.  CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the defendants' for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is **DENIED** in all respects; and it is further

**ORDERED**, that the parties are directed to report to United States Magistrate Judge Arlene Rosario Lindsay forthwith for the purpose of setting a new expedited discovery schedule.

**SO ORDERED**.

Dated: Central Islip, New York
September 18, 2006

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge